IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01972-MEH

ELI OLIVAS, and
MARISELA CHAVEZ,

    Plaintiffs,

v.

CITY OF FOUNTAIN, and
MATTHEW RACINE, in his individual and official capacities,

    Defendants.

---

**ORDER**

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Plaintiffs Eli Olivas ("Olivas") and Marisela Chavez ("Chavez") initiated this action in El Paso County District Court, Colorado, on July 21, 2017. Defendants removed the action to this Court on August 16, 2017, pursuant to 28 U.S.C. §§ 1441, 1443, and 1446. Plaintiffs filed an Amended Complaint as a matter of course on October 6, 2017, alleging generally that Defendants engaged in violations of Plaintiffs' rights secured by the Second, Fourth, Fifth, and Fourteenth Amendments. In response, Defendants City of Fountain (the "City") and Matthew Racine ("Racine") filed a motion to dismiss the Amended Complaint. Following review of the motion and briefing, the Court finds the Plaintiffs have failed to state plausible claims against either Defendant. Therefore, the Court will grant the Defendants' motion.

**BACKGROUND**

I.  **Statement of Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiffs in the Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[1]

Plaintiffs reside at 7934 Cairn Court in Fountain, Colorado. Am. Compl. ¶¶ 10–11. Mr. Olivas is a decorated American veteran who served tours in Iraq and Bosnia. *Id.* ¶ 3. He has been diagnosed with post-traumatic stress disorder and a compression fracture in his lumbar spine, and he has knee injuries caused by his service in the Army. *Id.* Ms. Chavez is a clinical coordinator in a dental facility. *Id.* ¶ 4.

Mr. Olivas is a registered medical marijuana patient pursuant to article XVIII, section 14 of the Colorado Constitution. *Id.* ¶ 12. Additionally, Mr. Olivas grows marijuana plants at his residence pursuant to article XVIII, section 16 of the Colorado Constitution. *Id.* At the relevant time, he was growing eighteen marijuana plants in an opaque plastic greenhouse in his backyard. *See id.* ¶¶ 10, 13–14, 25–26. The greenhouse was enclosed by a six-foot fence that surrounded the yard; the fence had an extension that climbed to approximately eleven feet on the portion facing the street. *Id.* ¶ 13. These measures obscured the plants from public view. *Id.* The fence was secured by two gates that were locked or screwed shut. *Id.*

Defendant Racine is an officer in the City of Fountain Police Department. *Id.* ¶ 6. On July

---

[1] Because the Amended Complaint frequently attributes conduct to an unspecified group of individuals, and because of its significance in the disposition of the motion, the Court's summary precisely attributes each allegation to the specified actor.

15, 2016, Racine secured a warrant, signed by a judge, that authorized the search of Plaintiffs' residence and the seizure of any marijuana, firearms, and ammunition discovered within. *Id.* ¶¶ 14–15. The warrant did not specify any particular crime Plaintiffs were suspected of committing. *Id.* ¶ 18. At approximately 6:00 a.m. on July 22, 2016, the City of Fountain Police Department executed the warrant. *Id.* ¶ 14. A SWAT team entered the residence by detonating a "flash bang" grenade. *Id.* ¶ 19. The grenade woke Mr. Olivas, and he went to the front of the house where he found the SWAT team waiting with their weapons drawn. *Id.* ¶ 20. The SWAT team ordered him out of the house, and he exited wearing only his underwear and a tee shirt. *Id.* The SWAT team then "raided" the house and forced Ms. Chavez outside, wearing only her nightgown. *Id.* ¶ 21. Ms. Chavez informed the police that she had a preexisting shoulder injury. *Id.* ¶ 22. The SWAT team then handcuffed both Plaintiffs and forced them to sit next to the exhaust pipe of a running police vehicle. *Id.* ¶ 21. Ms. Chavez experienced a "burning intense pain" and numbness in her shoulder as a result of being handcuffed. *Id.* ¶ 22. Both Plaintiffs experienced difficulty with their vision, faintness, nausea, and headaches because of the exhaust fumes. *Id.* ¶ 21.

During the raid, Mr. Olivas asked Detective Brenda Lagree why the police were searching his home. *Id.* ¶ 28. Detective Lagree replied that it was for an illegal grow operation, but she was "unsure" and "confused" on the law. *Id.* During the search, the police destroyed one of the gates surrounding the greenhouse, and the officers seized Mr. Olivas' 5.56 millimeter Sig Sauer rifle, Glock 17 handgun, and AK-47 rifle. *Id.* ¶¶ 25, 31. After the SWAT team completed the raid, the Plaintiffs were allowed to return to their home. *Id.* ¶ 30. Plaintiffs allege the "SWAT raid . . . was not an isolated episode. The same [conduct] occurred multiple times on the same morning of July 22, 2016." *Id.* ¶ 39.

3

## II. Procedural History

Based on these allegations, Plaintiffs bring four claims for relief, all under 42 U.S.C. § 1983: (1) violation of the Fourth and Fourteenth Amendments to be secure from unreasonable searches and seizures; (2) violation of the Fourth and Fourteenth Amendments for excessive force; (3) violation of the Fifth and Fourteenth Amendments for deprivation of liberty; and (4) violation of the Second and Fourteenth Amendments for deprivation of the right to keep and bear arms. Am. Compl. ¶¶ 43–57, ECF No. 25. The present motion asks the Court to dismiss the claims against the City for Plaintiffs' failure to identify a municipal policy, practice, or custom that caused Plaintiffs' injuries, and to dismiss the claims against Racine for Plaintiffs' failure to state a claim sufficient to overcome Racine's qualified immunity. Mot., ECF No. 27.

## **LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that

they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## **ANALYSIS**

As set forth above, Plaintiffs seek to impose liability on both the City and Racine for alleged deprivations of constitutional rights under Title 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

The Court will begin with an analysis of the claims against the City, then proceed to examine whether the Plaintiffs state plausible claims against Racine.

## I. Claims Against the City of Fountain

"A municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). "But, under § 1983, local governments are responsible only for 'their own illegal acts.'" *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). Plaintiffs' Amended Complaint presents two theories of imposing liability on the City through § 1983: deprivation through official policy or custom and failure to train. Defendants argue the Court should dismiss both claims, because the Amended Complaint merely supports the claims with conclusory allegations that are not sufficient to survive a motion to dismiss.

### A. Official Policy or Custom

A local government entity may be liable under § 1983 when the government's policy or custom causes the violation to a person's constitutional rights. *Monell*, 436 U.S. at 694. "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479. Therefore, "a

plaintiff asserting a § 1983 claim must show '1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged.'" *Mocek v. City of Albuquerque*, 813 F.3d 912, 933 (10th Cir. 2015) (quoting *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006)).

Here, Plaintiffs' claims fail, because they do not identify any city policy or custom that inflicted their injuries. All of Plaintiffs' allegations supporting these claims are the "threadbare recitals of the elements of a cause of action" that will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. Plaintiffs' only allegations pertaining to an unconstitutional policy or practice state, "At all times relevant herein, Defendant City of Fountain, acting through its Police Department, developed, implemented, enforced, encouraged and sanctioned de facto and/or express policies, practices, customs decisions and/or regulations promulgated by the City of Fountain's officers." Am. Compl. ¶ 40, ECF No. 25. However, Plaintiffs do not identify the relevant policy or custom, and this omission causes the claims to fail. *Lincoln v. Maketa*, 176 F. Supp. 3d 1179, 1190 (D. Colo. 2016) (dismissing a claim that did not "identify any particular custom or policy under which" the defendants were acting), *rev'd on other grounds*, ___ F.3d ___, No. 16-1127, 2018 WL 443394 (10th Cir. Jan. 17, 2018). Even if Plaintiffs did allege the City maintained a specific policy or custom that caused violations of their constitutional rights, that would not be sufficient to state a claim for relief without alleging facts that make the allegation plausible. *Mocek*, 813 F.3d at 934 (dismissing a claim that alleged a city had a "policy and custom of prohibiting lawful photography at the airport[] [and] retaliating against those who filmed at the airport," because it was not supported by sufficient factual allegations to be plausible); *Sandberg v. Englewood*, No. 16-cv-01094-CMA-KMT, 2017 WL 1148691, at *8 (D. Colo. Mar. 27, 2017) (dismissing a claim that

7

alleged a city "maintains a custom, policy and/or practice of detaining and searching individuals for exercising their right to openly carry firearms under the guise of the crime of disorderly conduct and seizing their firearms" because the conclusory statement merely recited the legal elements of the claim (quotation mark omitted)). Because Plaintiffs have failed to allege the City maintained a policy or custom that caused the deprivation of its citizens' constitutional rights, the Court dismisses the claims against the City.

### B. Failure to Train

"[T]here are limited circumstances in which an allegation of a 'failure to train' can be the basis for [municipal] liability under § 1983." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 773 (10th Cir. 2013) (quoting *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. "Only then 'can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.'" *Connick*, 563 U.S. at 61 (quoting *City of Canton*, 489 U.S. at 389).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997)). Therefore, "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* Then "[t]he city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of

8

a decision by the city itself to violate the Constitution.'" *Id.* at 61–62 (quoting *City of Canton*, 489 U.S. at 395). Still, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* at 61.

Plaintiffs' claims fail again, because the allegations of the City's conduct are entirely conclusory. Plaintiffs merely allege "[t]he actions of the individual Defendants . . . were the result of the failure of the City of Fountain Police Department to properly train, supervise and discipline its officers." Am. Compl. ¶ 38. While these allegations are wholly conclusory, they are also devoid of any allegation that the city had actual or constructive notice of a deficiency in its training program that was leading to the constitutional violation of its citizens' rights. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) ("[A] plaintiff must 'identify a specific deficiency' that was obvious and 'closely related' to his injury so that it might fairly be said that the official policy or custom was both deliberately indifferent to his constitutional rights and the moving force behind his injury[.]" (citation omitted)); *Estate of Reat v. Rodriguez*, No. 12-cv-02531-REB-MEH, 2014 WL 4358333, at *2 (D. Colo. Sept. 3, 2014) (dismissing a claim where the plaintiffs failed to allege "city policymakers [were] on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights"). Therefore, the Court dismisses the claims against the City.

## II. Claims Against Officer Racine

Defendants also argue all four claims against Racine should be dismissed for the Plaintiffs' failure to overcome Racine's qualified immunity. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "It is an

9

entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Supreme Court affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Before reaching the merits of the motion, the Court will identify the individual conduct that the Amended Complaint attributes to Racine. Then, after eliminating any legal conclusions that are not entitled to the presumption of truth, the Court will address whether Plaintiffs have plausibly stated a claim for relief against Racine. Finally, if necessary, the Court will proceed to examine whether the Plaintiffs' rights were clearly established.

The Court first looks to the Amended Complaint to identify the individual conduct that is attributable to Racine. "Individual liability under § 1983 must be based on [the defendant's] personal involvement in the alleged constitutional violation." *Schneider*, 717 F.3d at 768 (alteration in original) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)). To state a claim under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* (quoting *Iqbal*, 556 U.S. at 676). Allegations

10

that generally refer to "defendants" are "not sufficient to show how [an individual] 'might be individually liable for deprivations of [a plaintiff's] constitutional rights.'" *Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) (quoting *Robbins*, 519 F.3d at 1250). A complaint must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her . . . ." *Robbins*, 519 F.3d at 1250. Thus, to decide whether a § 1983 claim may proceed against an individual defendant when deciding a motion to dismiss, "[a court] must examine the allegations in the complaint as to each individual [defendant] to determine whether a plausible claim for relief is stated." *Wilson v. Montano*, 715 F.3d 847, 854 (10th Cir. 2013). Where a complaint uses generic collective terms, "'but with no distinction as to what acts are attributable to whom,' [a] [c]ourt will not speculate as to what acts a particular defendant is alleged to have committed." *New Mexico ex rel. Foy v. Vanderbilt Capital Advisors, LLC*, No. CIV 09-0178 RB, 2009 WL 3672921, at *4 (D.N.M. Apr. 13, 2009) (quoting *Robbins*, 519 F.3d at 1250).

Here, the Amended Complaint refers to Racine six times. Five of these occasions generally allege that Racine was employed by the City of Fountain Police Department and that the police department supervised his actions during the relevant events. *See* Am. Compl. ¶¶ 6–8, ECF No. 25. The lone remaining allegation asserts:

> The search warrant in this case was applied for by Defendant Racine and issued on July 15, 2016 by Judge Stephen J. Sletta. The facts and circumstances within the Defendants' knowledge at the time the application for the search warrant was made did not provide a reasonably trustworthy basis for a person of reasonable caution to believe that a criminal offense had been committed or was about to take place and it was not based upon probable cause.

*Id.* ¶ 15. Otherwise, the Amended Complaint attributes the events at Plaintiffs' residence to a "SWAT Team," *id.* ¶¶ 14, 19–20, 30, the "police," *id.* ¶¶ 16, 20, 22, 25–28, or "Defendants," *id.* ¶¶

11

15, 31, 36–38. While these allegations may or may not be sufficient to state a § 1983 claim, under the relevant pleading standards, they are not attributable to Racine.

Next, the Court will remove the allegations that are nothing more than legal conclusions and are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 679 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). Of the two allegations of Racine's personal conduct, the assertion that the warrant was not based on probable cause is a legal conclusion not entitled to a presumption of truth. *See Draper v. United States*, 248 F.2d 295, 300 (10th Cir. 1957) ("Whether there is probable cause is a legal conclusion to be drawn from a consideration of the facts."); *see also Iqbal*, 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). Thus, the allegations of Racine's personal conduct that the Court presumes to be true are (1) Racine is employed by the City of Fountain Police Department, and (2) Racine applied for the search warrant that was later executed at Plaintiffs' residence. The question becomes whether these allegations are sufficient to plausibly support any of Plaintiffs' claims for relief.

A.     Fourth Amendment Claim Based on Lack of Probable Cause

Addressing the Fourth Amendment claim based on the premise that the warrant to search Plaintiffs' residence was not supported by probable cause,[2] the allegation that Racine applied for the

---

[2] To support Defendants' argument that the Court should dismiss Plaintiffs' Fourth Amendment search and seizure claim against Racine because the warrant was properly supported by probable cause, Defendants submit a copy of the warrant and the accompanying affidavit for the Court to consider in deciding the Motion to Dismiss, as permitted by Tenth Circuit precedent. Mot. Ex. A, ECF No. 27-1. However, the Court does not reach this argument, because it finds Plaintiffs'

warrant that authorized the search is not sufficient to support this claim. Aside from the conclusory allegation that the application for the warrant was not supported by probable cause, no factual allegation in Amended Complaint supports the proposition. *Cf. Hartman v. Moore*, 547 U.S. 250, 261–66 (2006) (requiring a plaintiff to plead lack of probable cause in the context of a § 1983 claim based on retaliatory prosecution). For example, Plaintiffs make no factual allegations regarding what was actually in the warrant application. *See, e.g.*, *Smith v. Barber*, 195 F. Supp. 2d 1264, 1276 (D. Kan. 2002) (finding an allegation that an officer "rel[ied] solely on the unsubstantiated allegations of [an informant]" whom the officer knew to be unreliable was sufficient to state a Fourth Amendment claim against the officer). Here, the operative pleading contains no such allegations against Racine.[3] Further, Plaintiffs allege the warrant was signed by a judge, Am. Compl. ¶ 15, and a magistrate's probable cause determination, without more, is afforded great deference, *Poolaw v. Marcantel*, 565 F.3d 721, 728 (10th Cir. 2009) ("[A court will] pay great deference to the probable cause determination made by the judge who issued the warrant."); *United States v. McKneely*, 6 F.3d 1447, 1455 (10th Cir. 1993) (noting a magistrate's probable cause determination is afforded "great deference"). Therefore, the Court finds Plaintiffs fail to plausibly state a claim against Racine for violation of the Fourth Amendment for obtaining a warrant without probable cause, and Racine is thus entitled to qualified immunity. The Court will dismiss this claim.

    B.    <u>Fourth Amendment Claim Based on a Defective Warrant</u>

Plaintiffs additionally base a Fourth Amendment claim on the allegation that the warrant

---

allegations to be insufficiently pled.

[3] The allegations contained in paragraph 16 of the Amended Complaint, that "the police failed to conduct proper research . . . before it raided [Plaintiffs'] home with a SWAT team," do not mention Racine and there is no indication that Racine himself was involved in the raid.

13

authorizing the search was defective. Am. Compl. ¶ 44 ("[Defendants] deprive[d] the Plaintiffs of their rights to be free from unreasonable searches and seizures . . . without . . . a valid search warrant as required by the Fourth Amendment . . . ."). However, Plaintiffs briefing does not articulate how they allege the warrant was defective. The allegations in the Amended Complaint pertaining to the warrant are (1) the warrant authorized the seizure of marijuana, firearms, and ammunition, Am. Compl. ¶ 14, (2) Racine applied for the warrant, *id.* ¶ 15, (3) the warrant was signed by Judge Stephen J. Sletta, *id.*, and (4) the warrant did not specify any crime Plaintiffs were committing by possessing firearms or ammunition, *id.* ¶ 18. These allegations do not amount to a violation of the Fourth Amendment.

Plaintiffs do not identify any specific attribute of the warrant that violates the Fourth Amendment. To the extent that Plaintiffs allege the warrant did not identify any specific crime Plaintiffs were suspected of committing, Plaintiffs do not cite to any case supporting the proposition that such omission can be the basis of a Fourth Amendment claim. Indeed, the lack of identifying a specific crime does not itself render a warrant defective. *United States v. Fumo*, 565 F. Supp. 2d 638, 644 (E.D. Pa. 2008) ("[T]here is no per se requirement that a search warrant describe the criminal activity alleged."); *United States v. Slaey*, 433 F. Supp. 2d 494, 495 n.1 (E.D. Pa. 2006) ("There is no constitutional or other requirement that the warrant itself identify the sections of the criminal code on which the warrant is predicated."); *United States v. Feldman*, 366 F. Supp. 356, 363 (D. Haw. 1973) ("The specific charges that may later turn up in an indictment need not be spelled out in the affidavit nor in the search warrant."). Plaintiffs' claim that the warrant that authorized the search of their residence was defective does not allege a violation of the Fourth Amendment, and Racine is entitled to qualified immunity. The Court therefore dismisses this claim.

C. The Remaining Claims

Dismissal of the remaining claims is also appropriate. The Court has scoured the Amended Complaint and nothing plausibly gives rise to a claim that Racine used excessive force against the Plaintiffs, deprived the Plaintiffs of liberty, or deprived them of their right to bear arms. *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Therefore, the Court finds Racine entitled to qualified immunity and dismisses these claims as well.

D. Clearly Established Law

Even if the Amended Complaint plausibly stated a claim for relief, Plaintiffs' claim would still fail, because they have not met their burden of demonstrating Racine's conduct violated clearly established law. When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins*, 572 F.3d at 1107. "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* "A plaintiff may satisfy th[e] [clearly established law requirement] by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010)).

Here, Plaintiffs fail to cite to any Supreme Court or Tenth Circuit precedent that "place[s] the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Instead, Plaintiffs cite to the Colorado law with which, they allege, their home-grown marijuana complied. Resp. 17–18, ECF No. 30. This argument does nothing to demonstrate "that the conduct of the officer[] in this case violated the [Fourth] Amendment." *Wilson v. Layne*, 526 U.S. 603, 615–16 (1999). Because Plaintiffs have failed to identify any clearly established law that Racine's conduct violated, he is entitled to qualified immunity, and Plaintiffs' claims must be dismissed.

## CONCLUSION

Here, the Amended Complaint lacks necessary factual material to support its otherwise conclusory allegations. It also fails to allege personal participation on behalf of Racine and, thus, he is entitled to qualified immunity from the Plaintiffs' claims. Accordingly, Defendants' Motion to Dismiss [filed October 16, 2017; ECF No. 27] is **granted**.

Entered and dated this 30th day of January, 2018, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge